United States District Court
Southern District of Texas
**ENTERED**
June 11, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARTHUR C. JOHNSON, | § | |
| TDCJ #02191326, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-18-1218 |
| | § | |
| J. A. ALLEN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Arthur C. Johnson, proceeding *pro se* and *in forma pauperis*, is presently confined in the Estelle Unit of the Texas Department of Criminal Justice.   Johnson filed this complaint alleging a violation of his civil rights under 42 U.S.C. § 1983 for an incident that occurred while he was confined in the Harris County Jail as a pretrial detainee.   *See* Doc. No. 1.   At the Court's request, Johnson also filed a More Definite Statement (Doc. No. 18).  Pending are Johnson's Motion for Appointment of Counsel (Doc. No. 46) and Motion for Leave to File Plaintiff's Belated Response (Doc. No. 48).   Defendants' Supplemental Briefing to their Second Motion for Summary Judgment and Johnson's Response are also pending.   *See* Doc. Nos. 34, 44, 49.   The Court has carefully considered the pleadings, motions, supplemental briefing,

responses, evidence in the record, and the applicable law and concludes as follows.

## I.   Background

Johnson alleges that on February 12, 2018, Defendant Officer Pierre Williams ("Williams") pushed him down the stairs, which caused Johnson to run into a brick wall and fracture his hand. Doc. No. 18 at 1. Johnson further alleges that Williams then pushed him down a *second* flight of stairs, twisted his arm up over his back, and ran his head into a metal window frame. Id. Johnson claims that Defendant Detention Officer Joshua Allen ("Allen") just stood by and did nothing to stop Williams. Id. Johnson submits an affidavit averring that Sergeant Templeton was briefed on the entire assault and that he was taken to the infirmary at 701 Jail facility for evaluation, then to 1200 Baker Street for x-rays, and then to Ben Taub Hospital for emergency treatment for his injuries. Doc. No. 1 at 6 (Johnson Affidavit).

Defendants' first Motion for Summary Judgment (Doc. No. 32) was granted, in part, as to the official capacity claims but denied as to the individual capacity claims against Williams and Allen. *See* Doc. No. 33. Defendants filed a Second Motion for Summary Judgment, to which Johnson filed no response. Doc. No. 34. Based on the Court's previous instructions and warnings to the plaintiff,

it dismissed this case without prejudice for failure to prosecute under Federal Rule of Civil Procedure 41(b). *See* Doc. No. 35. In that same Order, the Court dismissed Defendants' Second Motion for Summary Judgment as moot. Id.

Johnson subsequently filed a Motion to Reopen under Rule 60(b). Doc. No. 39. The Court granted Johnson's motion and reopened this case on January 5, 2021. Doc. No. 43. In that Order, the Court directed Defendants Williams and Allen to file supplemental briefing and evidence, if such exists, to support their assertions of qualified immunity. Id. Defendants filed supplemental briefing, and Johnson filed a response, which are considered below.

## II.  Legal Standards

### A.  Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the

3

burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." Hamilton v. Seque Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000) (quoting Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994)).

## B.  Qualified Immunity

Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See* Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986). As a result, courts will not deny qualified immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Id. at 2080 (citation omitted).

Although qualified immunity is an affirmative defense, the plaintiff bears the burden of negating qualified immunity once it has been properly raised by the defendant. Collier v. Montgomery,

569 F.3d 214, 217 (5th Cir. 2009).  When qualified immunity is invoked at the summary judgment stage, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). Instead, "qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant," at the summary judgment stage. Id.

Clearly established rights must be "particularized" to the facts of the case and cannot be defined at a high level of generality. White v. Pauly, 137 S. Ct. 548, 552 (2017). However, "[t]hat is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 122 S. Ct. 2508, 2515 (2002) (internal citations omitted). In other words, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" Id. at 2516 (quotation and internal citations omitted); accord Taylor v. Riojas, 141 S. Ct. 52, 53-54 (2020).

## III. Discussion

### A.  Harris County

Harris County's Second Motion for Summary Judgment was denied as moot when the Court dismissed this case without prejudice for failure to prosecute.  Because this case is reopened, Harris County's motion is reinstated and it is entitled to a ruling on the merits.

Although municipalities like Harris County are "persons" within the meaning of § 1983, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 98 S. Ct. 2018, 2036 (1978) (emphasis in original); City of Canton v. Harris, 109 S. Ct. 1197, 1207 (1989).  The bar on vicarious liability means that the municipality can only be liable where the municipality itself causes the constitutional violation at issue.  Monell, 98 S. Ct. at 2037-38.  A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his constitutional rights.  Id.

To state a claim for municipal liability under § 1983, a plaintiff must identify (a) a policymaker, (b) an official policy (or custom or widespread practice), and (c) a violation of

6

constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.), *cert. denied,* 122 S. Ct. 53 (2001) (*citing* Monell, 98 S. Ct. at 2038). The Fifth Circuit has defined an official policy for purposes of § 1983 as "'[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's law-making officials or by an official to whom the lawmakers have delegated policy-making authority.'" Okon v. Harris Cnty. Hosp. Dist., 426 F. App'x 312, 316 (5th Cir. 2011) (quoting Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*), *cert. denied,* 105 S. Ct. 3476 (1985)).

Johnson does not allege that Harris County had an official written policy advocating the use of excessive force or that it has a practice, custom, culture, procedure, and/or training of permitting and/or encouraging excessive force against pretrial detainees. In addition, he does not present any summary judgment evidence to raise a fact issue that Harris County had any such policy, practice, or custom, much less a policy to use brutal physical force such as that alleged here of gratuitously and successively pushing a detainee down two flights of steps in the Jail. Therefore, Harris County is entitled to summary judgment on Johnson's claims against it for the February 12, 2018 incident at issue in this case.

7

**B.**    **Detention Officers Pierre Williams and Joshua A. Allen**

Because Johnson was a pretrial detainee at the time of the incident that forms the basis of his claims, his excessive force claims are analyzed under the Fourteenth Amendment's Due Process Clause. *See* <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2475 (2015) (explaining that the Fourteenth Amendment Due Process Clause governs a pretrial detainee's claim for excessive use of force); <u>Bell v. Wolfish</u>, 99 S. Ct. 1861, 1872 & n. 16 (1979) (holding that the Fourteenth Amendment, rather than the Eighth Amendment, provides the basis for claims relating to pretrial detainees).  To prevail on a claim of excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  <u>Kingsley</u>, 135 S. Ct. at 2472-73. In that regard, "objective reasonableness turns on the facts and circumstances of each particular case," including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  <u>Id.</u> at 2473 (quotation marks and citation omitted).

Williams and Allen do not offer any facts or summary judgment evidence to explain Williams's actions other than a half-page

letter from the Office of Inspector General addressed to Williams stating that the use of force accusation against him was "NOT SUSTAINED."[1]   Defendants do not controvert Johnson's allegation that he sustained a fractured hand on February 12, 2018 as a result of an altercation with Williams that required attention at Ben Taub Hospital.   Nor do they contend or present summary judgment evidence that there was any threat from the plaintiff, that there was any effort from either Williams or Allen to temper the amount of force used, that the plaintiff was actively resisting, or that there was some security need to push him down the stairs.   Instead, they take the position that reasonable officers could think that the alleged conduct in this case, without provocation intentionally pushing a pretrial detainee down two flights of stairs and then shoving the detainee against the wall after twisting his arm and breaking his hand, would not violate that detainee's civil rights.

Contrary to the Defendants' position, it is clearly established that prison guards may not gratuitously abuse prisoners by assaulting them or causing them to be assaulted.   *See* Cowart v. Erwin, 837 F.3d 444, 449, 454-55 (5th Cir. 2016) (denying qualified immunity where the officer gratuitously punched plaintiff who was not resisting and noting that it was clearly

---

[1] Docket Entry No. 32-2.

established before 2009 that "officers may not 'use gratuitous force against a prisoner who has already been subdued'"); *see also* Wilkins v. Gaddy, 130 S. Ct. 1175, 1178-79 (2010) (explaining that "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury"); Williams v. Stauche, 709 F. App'x 830, 836 (7th Cir. 2017) (noting "[t]hat guards cannot gratuitously abuse prisoners is clearly established" regarding Fourteenth Amendment claim by pretrial detainee); McCowan v. Morales, 945 F.3d 1276, 1283 (10th Cir. 2019) (in the Fourth Amendment context, holding that it is clearly established that the gratuitous use of force against an arrestee who is not posing a threat or resisting violates the arrestee's civil rights). Courts have found that the law is clearly established that gratuitous physical abuse of those in custody is unlawful, whether that abuse consists of shoving them against a wall,[2] throwing them

---

[2] *See* Williams, 709 F. App'x at 832.

on the ground,[3] body slamming them,[4] or, as in this case, intentionally pushing them down the stairs.[5]

The constitutional rule already identified in the decisional law on gratuitous physical abuse amounting to the excessive use of force applies with obvious clarity here regarding the unlawfulness of intentionally pushing someone down two flights of stairs, regardless of whether this "very action in question" has been previously held unlawful or not. *See* Hope, 122 S. Ct. at 2516 (quotation and internal citations omitted); *accord* Taylor, 141 S. Ct. at 53-54.

Taking the evidence -- which here includes Johnson's affidavit attached to his Complaint and his More Definite Statement that was verified under penalty of perjury -- in the light most favorable to the non-movant and drawing all justifiable inferences therefrom, Johnson has raised a fact issue as to whether the force

---

[3] *See* id.; Wilkins, 130 S. Ct. at 1177, 1179; *see also* Crawford v Geiger, 656 F. App'x 190, 207-08 (6th Cir. 2016) (in Fourth Amendment context, denying qualified immunity where officer threw arrestee to the ground).
[4] *See* Harris v. Langley, 647 F. App'x 585, 590 (6th Cir. 2016) (denying qualified immunity because it was clear that unprovoked body slams violate the Fourth Amendment "whether this exact scenario has been held unlawful in a previous decision or not").
[5] *See* Ali v. Duboise, 763 F. App'x 645, 648, 651 (10th Cir. 2019) (holding that a federal prisoner's allegations that the jail official caused him to fall down the stairs head first causing injuries stated a claim for excessive force under the Eighth Amendment because "clearly established law made it clear [the officer's] alleged conduct was unlawful" even though the plaintiff did not identify a similar case); *see also* Arnold v. Curtis, 359 F. App'x 43, 47-48 (10th Cir. 2009) (holding, in the Fourth Amendment context, that the police officer who threw the plaintiff down the stairs was not entitled to qualified immunity for that action).

11

used by Williams was excessive to the need and was objectively unreasonable given the circumstances. He has also raised a fact issue as to whether Allen, as a bystander who allegedly was present, violated Johnson's civil rights by not intervening to stop the gratuitous physical abuse. *See* Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995) (holding that the plaintiff raised a fact issue on bystander liability where the officer was present at the scene and did not take reasonable measures to protect him from another officer's use of excessive force). Accordingly, Johnson has raised fact issues on his claims that Williams and Allen, in their individual capacities, violated his constitutional due process rights under the Fourteenth Amendment.

In addition, as discussed above, no reasonable officer could believe that it is constitutionally permissible to push a detainee (or anyone, for that matter) down two flights of stairs intentionally, as is alleged in this case. Nor would any reasonable officer conclude that it was constitutionally permissible to stand by and do nothing while his fellow officer violated an individual's constitutional rights by pushing him down successive flights of stairs. Therefore, based on this record, qualified immunity is not appropriate, and Williams's and Allen's motion for summary judgment must be DENIED.

## IV.   Motion for Appointment of Counsel

Johnson moves for appointment of counsel.  A federal court may locate counsel for an indigent litigant where a case presents exceptional circumstances.  *See* Naranjo v. Thompson, 809 F.3d 793, 803 (5th Cir. 2015).  In deciding whether exceptional circumstances exist, a court may consider: (1) the type and complexity of the case; (2) whether the indigent litigant is capable of adequately presenting and investigating the case; (3) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination; and (4) the likelihood that appointment of counsel will benefit the petitioner, the court, and the defendants by shortening the trial and assisting in just determination. *See* id. at 799; Jackson v. Dallas Police Dep't, 811 F.2d 260, 261-62 (5th Cir. 1986); Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982). A district court has "considerable discretion" in deciding whether to appoint counsel.  Naranjo, 809 F.3d at 801 (citing Branch v. Cole, 686 F.2d 264, 267 (5th Cir. 1982)).

The  Court  concludes  that  exceptional  circumstances  are present and that counsel is necessary because the plaintiff has stated colorable claims that may not receive a meaningful hearing if counsel is not appointed.  Id.  It may be that the evidence will consist of conflicting testimony where the skill of counsel

13

in presentation of evidence and cross-examination of witnesses will be required.   Johnson represents that his injuries prevent him from writing, which further hinders his ability to prosecute this case.   The Court finds that the appointment of counsel will aid in the efficient and equitable disposition of this case.

## V.   ORDER

Based on the foregoing, it is hereby

**ORDERED** that Defendants' Second Motion for Summary Judgment (Doc. No. 34) is **GRANTED in part** as to Harris County, and the claims against Harris County are **DISMISSED**, and the motion is otherwise **DENIED**; it is further

**ORDERED** that Plaintiff's Motion for Appointment of Counsel (Doc. No. 46) and Motion for Leave to File Plaintiff's Belated Response (Doc. No. 48) are **GRANTED**; and it is

**ORDERED** that this case is **STAYED** while the Court locates counsel willing to volunteer to take this case.   Once counsel is appointed, the Court will order a scheduling conference and set this case for trial.

      The Clerk will enter this Order, providing a correct copy to all parties of record.

      SIGNED at Houston, Texas, on this 11ᵀᴴ day of June, 2021.

                        EWING WERLEIN, JR.
                   UNITED STATES DISTRICT JUDGE

15